Filed in the Trial Courts
State of Alaska First District
at Ketchikan

MAR 1 8 2011

Clerk of the Trial Courts

By _____ Deputy

ANSWER due 4/30/11

H. Clay Keene
Alaska Bar No: 7610110
KEENE & CURRALL, P.C.
540 Water Street, Suite 302
Ketchikan, Alaska 99901
Phone: (907) 225-4131
Fax: (907) 225-0540
E-mail: info@keenecurrall.com

Attorneys for Plaintiff

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## FIRST JUDICIAL DISTRICT AT KETCHIKAN

ALCAN FOREST PRODUCTS LP,              )
an Alaska Limited Partnership,         )
                                       )
                   Plaintiff,          )
                                       )
        v.                             )
                                       )
A-1 TIMBER CONSULTANTS, INC.,          ),
a Washington Corporation,              )
                                       )
                   Defendant.          )      Case No. 1KE-11-_142_ CI
_____)

## COMPLAINT FOR BREACH OF CONTRACT AND
## VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT

NOW INTO COURT COMES Plaintiff, Alcan Forest Products LP, by and through its

attorney, H. Clay Keene of the law firm of Keene & Currall, and for a cause of action against

Defendant, A-1 Timber Consultants, Inc., alleges as follows:

### I. Statement of Civil Action

1.      This civil action seeks judgment against A-1 Timber for breach of a Falling and

Bunching Contract (the "Contract"), a true and correct copy of which is attached as Exhibit 1,

and for violations of Alaska's Unfair Trade Practices and Consumer Protection Act, AS

COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE
PRACTICES ACT - Page 1 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

EXHIBIT B
Page 1 of 26

Case 5:11-cv-00001-SLG    Document 1-2    Filed 04/08/11    Page 1 of 26

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

THIS MATTER IS
FORMALLY ASSIGNED TO
WILLIAM B. CAREY
SUPERIOR COURT JUDGE

45.50.471 – 45.50.561.

## II. Parties

2.      Alcan was at all times relevant to this civil action an Alaska limited partnership, in good standing, with its principal place of business in Ketchikan, Alaska.

3.      Upon information and belief, A-1 Timber is a Washington corporation authorized to do business in Alaska by that Certificate of Authority issued by the State of Alaska on November 2, 2010.

## III. Jurisdiction

4.      This Court has subject matter jurisdiction over this civil action pursuant to Alaska Statute 22.10.020 because the amount in controversy, exclusive of costs, interest and attorney fees, exceeds $100,000.00. See also, Alaska Statute 22.15.030(a)(1).

5.      This Court has personal jurisdiction over A-1 Timber pursuant to Alaska Statute 09.05.015(a)(1)(C) and Alaska Statue 09.05.015(a)(5)(A) and (B) because A-1 Timber is authorized to conduct business in Alaska and the controversy arises from promises made and services rendered by A-1 Timber at or near Ketchikan, being within the First Judicial District.

6.      Venue is proper within the Superior Court at Ketchikan pursuant to Alaska Statute 22.10.030 and Ak.R.Civ.P. 3 because the claims brought herein by Alcan, arose at or near Ketchikan, being within the First Judicial District.

## IV. Breach of Falling and Bunching Contract

7.      In March 2010, Alcan had rights to harvest timber on Long Island, located approximately 50 air miles from Ketchikan, and Coon Cove, located approximately 15 air miles

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 2 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

from Ketchikan.

8.    The Long Island harvest area is owned by Klukwan Corporation, and in March 2010 consisted of approximately 25 million board feet of second growth standing timber. As of March 2010, Alcan had two years remaining on its contract with Klukwan Corporation to harvest the 25 million board feet at Long Island.

9.    The Coon Cove harvest area is owned by the Cape Fox Corporation, and in March 2010 consisted of approximately 6 million board feet of second growth standing timber. As of March 2010, Alcan had until December 31, 2010 on its contract with Cape Fox to harvest the 6 million board feet at Coon Cove.

10.    In March 2010, Alcan representative Mike Doig contacted A-1 Timber regarding A-1 Timber's interest to contract cut the 20 million board feet of standing timber at Long Island and Coon Cove.

11.    Doig knew of A-1 Timber and its owner, Tom Loushin, from past experience in the timber industry in the State of Washington.

12.    A-1 Timber advertised and promoted itself as capable and experienced in mechanical felling of timber.

13.    As of March 2010, neither A-1 Timber nor Loushin had performed mechanical felling of timber in Alaska.

14.    In late March 2010, Loushin traveled to Ketchikan to meet with principles of Alcan to discuss A-1 Timber contracting with Alcan to provide mechanical felling services.

15.    On or about March 30, 2010, Alcan representatives took Loushin to a timber

COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT - Page 3 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

harvest area on Cape Fox Corporation land similar to and near the Coon Cove harvest area.

16.     On or about March 31, 2010, Loushin met with Alcan representatives in Ketchikan ("Ketchikan Meeting") and discussed a falling and bunching contract.

17.     At the Ketchikan Meeting, Loushin was told that Alcan required a minimum of 14 million board feet of standing second growth timber at Long Island to be cut by October 31, 2010.

18.     At the Ketchikan Meeting, Loushin was told that Alcan required the entire 6 million board feet of standing timber at Coon Cove to be cut by October 31, 2010.

19.     At the Ketchikan Meeting, Loushin told Alcan that A-1 Timber had sufficient equipment and personnel to cut the combined 20 million board feet at Long Island and Coon Cove by October 31, 2010.

20.     At the Ketchikan Meeting, Loushin told Alcan that A-1 Timber would have its best operator cut the timber at Long Island and Coon Cove using a Tigercat Feller Buncher, and that A-1 Timber would furnish all labor, equipment, parts, and competent workers and supervisors to timely and diligently perform the felling buncher work at Long Island and Coon Cove by October 31, 2010.

21.     At the Ketchikan Meeting, Loushin promised Alcan that if A-1 Timber was awarded the contract for the felling work at Long Island and Coon Cove, that A-1 Timber's Alaska operations would be limited to Long Island and Coon Cove, and that A-1 Timber would not perform any other work in Alaska until A-1 Timber had completed its operations at Long Island and Coon Cove.

COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT - Page 4 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

22. At the Ketchikan Meeting, Loushin promised Alcan that A-1 Timber had other equipment it could and would send to Ketchikan to work at Long Island and Coon Cove if the Tigercat broke down and was unable to perform.

23. At the Ketchikan Meeting, Loushin promised Alcan that A-1 Timber could and would cut five acres of standing timber a day at Long Island and Coon Cove.

24. At the Ketchikan Meeting, Loushin promised Alcan that A-1 Timber would complete the mechanical felling of the 20 million board feet of standing timber at Long Island and Coon Cove by July or August 2010.

25. At the Ketchikan Meeting, Loushin promised Alcan that A-1 Timber would maintain continuous mechanical felling operations to coordinate with the logging and hauling operations to be conducted by Alcan that Loushin understood and agreed depended entirely on A-1 Timber maintaining continuous mechanical felling operations at Long Island and Coon Cove.

26. At the Ketchikan Meeting, Loushin promised Alcan that A-1 Timber's mechanical felling would stay ahead of Alcan's logging and hauling work, and Loushin promised that at no time would Alcan's crew be out of work due to A-1 Timber's failure to put sufficient timber on the ground for Alcan to maintain continuous logging and hauling operations.

27. At the Ketchikan Meeting, Loushin promised Alcan that A-1 Timber would work as much as necessary to complete the felling at both Long Island and Coon Cove in a timely, diligent and continuous manner.

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 5 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-____ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

28.     The Contract required A-1 Timber to commence work at Long Island on April 15, 2010.

29.     A-1 Timber did not commence work under the Contract on April 15, 2010 because A-1 Timber failed to timely meet the barge schedule from Seattle that was necessary to mobilize A-1 Timber's equipment to Ketchikan.

30.     A-1 Timber did not begin work at Long Island until on or about April 23, 2010.

31.     Pursuant to the Contract, Alcan paid $5,345.75 for the cost to barge A-1 Timber's equipment from Seattle to Ketchikan.

32.     Pursuant to the Contract, Alcan paid for the cost to barge A-1 Timber's equipment from Ketchikan to Long Island.

33.     Pursuant to Paragraph 27 of the Contract, A-1 Timber agreed to have an "on-site" representative of A-1 Timber at Long Island for "day-to-day" management issues.

34.     A-1 Timber appointed Dan Ward as its "on-site" representative for "day-to-day" management issues that arose at Long Island under the Contract.

35.     A-1 Timber assigned Dan Ward to operate the Tigercat at Long Island.

36.     It is believed that at the time A-1 Timber was negotiating the Contract with Alcan, A-1 Timber was negotiating that certain Timber Purchase and Sale Agreement with Leisnoi, Inc., that would be performed at or near Kodiak Island simultaneous with work A-1 Timber would perform under the Contract.

37.     A material consideration of the Contract was A-1 Timber's promise that it would not be engaged in any mechanical felling and logging operations in Alaska other than the

COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT - Page 6 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

mechanical felling work A-1 Timber promised to perform under the Contract.

38.     Dan Ward was the only A-1 Timber employee working at Long Island for A-1 Timber.

39.     Under the terms of the Contract, A-1 Timber would be paid an hourly rate of $220.00 for each hour the Tigercat operated at Long Island and Coon Cove.

40.     On May 18, 2010, A-1 Timber invoiced Alcan a total of $18,700.00 for 85 hours that A-1 Timber claimed the Tigercat operated at Long Island from April 23 to May 15.

41.     On June 17, 2010, A-1 Timber invoiced Alcan a total of $32,780.00 for 149 hours that A-1 timber claimed the Tigercat operated at Long Island from May 16 to July 7.

42.     A-1 Timber had many work stoppages at Long Island during the period from April 23 to July 7.

43.     A-1 Timber's work stoppages at Long Island during the period from April 23 to July 7 occurred because Dan Ward was unavailable and A-1 Timber's equipment broke down.

44.     A-1 Timber's work stoppages during the period from April 23 to July 7 left Alcan's work crew at Long Island idle because there was no felled timber to log and haul.

45.     A-1 Timber's work stoppages from April 23 to July 7 caused delays of harvesting activities at Long Island which prevented completion of the felling operations at Coon Cove by October 31, 2010.

46.     As a direct result of A-1 Timber's work stoppages, Alcan was required to assign four "cutters" to Long Island to fell timber that A-1 Timber was unable to fell.

47.     During the period from April 23 to July 7, A-1 Timber failed to diligently,

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 7 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-____ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

timely and continuously perform mechanical felling operations at Long Island in material breach of Paragraph 1 of the Contract.

48.    During the period of April 23 to July 7, A-1 Timber failed to furnish sufficient labor, equipment, materials, supplies and competent supervision to the mechanical felling operations it was obligated to perform at Long Island, all of which was a material breach of Paragraph 1 of the Contract.

49.    During the period of April 23 to July 7, A-1 Timber failed to diligently and continuously perform the mechanical felling operations it promised to perform at Long Island under the Contract, all of which was a material breach of Paragraph 1 of the Contract.

50.    A-1 Timber failed to maintain a representative at Long Island to manage the day-to-day operations at Long Island during the period from April 23 to July 7, all of which was a material breach of Paragraph 27 of the Contract.

51.    The Tigercat which A-1 Timber assigned to Long Island was inoperable from June 15 to July 7 due to the loss of the "headsaw."

52.    A-1 Timber promised Alcan that it provide sufficient equipment and labor to ensure continued mechanical felling operations at Long Island and Coon Cove.

53.    A-1 Timber failed to provide sufficient equipment and labor to ensure continued mechanical feeling operations at Long Island and Coon Cove.

54.    A-1 Timber did not respond to Alcan's attempts to contact the company concerning A-1 Timber's work stoppage at Long Island during the period from June 15 to July 7 due to the breakdown of A-1 Timber's equipment at Long Island.

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 8 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

**EXHIBIT B**
**Page 8 of 26**

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

55.     Based on information and belief, A-1 Timber was unable to continue mechanical felling operations at Long Island because it had located a major part of its logging equipment and personnel to Kodiak, Alaska, all of which was a material breach of A-1 Timber's promise that its Alaska operations would be limited to Long Island and Coon Cove until it fulfilled its obligations under the Contract.

56.     A-1 Timber failed or refused to acquire and maintain worker's compensation insurance for its Alaska employees during its operations under the Contract, in breach of the Contract.

57.     On or about July 7, 2010, Alcan elected to terminate the Contract pursuant to Paragraph 21 of the Contract because of A-1 Timber's failure to "promptly" perform work under the Contract.

58.     On or about July 7, 2010, Alcan gave notice to A-1 Timber of its election to terminate the Contract.

59.     On or about July 7, 2010, A-1 Timber acknowledged that its work under the Contract was not "done in a timely manner."

60.     On or about July 7, 2010, A-1 Timber agreed to "cease and desist from the job" and to remove A-1 Timber's equipment from Long Island.

61.     On or about July 8, 2010, Alcan confirmed with A-1 Timber that it was terminating the Contract based on A-1 Timber's ongoing and material failure to perform its obligations under the Contract, and its failure to fell sufficient timber to stay ahead of Alcan's logging and hauling operations on Long Island.

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 9 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11- ___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

**EXHIBIT B
Page 9 of 26**

Case 5:11-cv-00001-SLG   Document 1-2   Filed 04/08/11   Page 9 of 26

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

62.     A-1 Timber worked a total of 234 hours between April 23, 2010 and July 7, 2010, during which time A-1 Timber felled approximately 1.5 million board feet of standing timber.   Based on A-1 Timber's representations and promise to mechanically fell 150,000 board feet of timber each day, A-1 Timber should have felled 12-14 million board feet of timber from April 23 to July 7, 2010.

63.     After the Contract with A-1 Timber was terminated, Alcan continued the timber harvesting on Long Island at additional expense to Alcan, the exact amount of which will be proven at trial.

64.     A-1 Timber's failure to timely perform the work under the Contract delayed the sale of logs harvested from Long Island.   In the event the log market declines, Alcan may incur a loss of sale price for the sale of timber from Long Island that would not have otherwise been incurred had the timber been timely harvested.

65.     Alcan satisfactorily performed all obligations required by Alcan under the Contract prior to the date the Contract was terminated.

66.     Alcan was not able to complete timber harvest at Coon Cove because of the work stoppages, equipment breakdowns, and A-1 Timber's material breach of the Contract.

67.     Alcan incurred substantial expense as a result of having to continue logging operations at Long Island and Coon Cove beyond the Contract completion date of October 31, 2010.

68.     Alcan was unable to complete harvesting activities at Coon Cove prior to the expiration of its contract with Cape Fox Corporation as a direct and proximate result of A-1

COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE
PRACTICES ACT - Page 10 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

EXHIBIT B
Page 10 of 26

Timber's material breach of the Contract. Alcan is presently negotiating with Cape Fox Corporation to purchase an extension of that contract which would allow Alcan to complete logging of the remaining timber at Coon Cove. If Alcan is unsuccessful in negotiating an extension with Cape Fox Corporation to complete logging activities at Coon Cove, Alcan will suffer the loss of timber sales from the remaining standing timber and the costs of roads and other infrastructure it developed to complete logging activities at Coon Cove under its contract with Cape Fox Corporation.

69. If Alcan is successful in negotiating an extension with Cape Fox Corporation to complete logging activities at Coon Cove, Alcan has and will continue to incur additional costs to extend the contract period, the exact amount of which is not presently known. In such event, it is anticipated that Alcan would be able to complete logging operations at Coon Cove during 2011.

70. If Alcan is able to complete logging activities at Coon Cove, it is anticipated that Alcan will incur costs that would not have been incurred but for A-1 Timber's breach of the Contract, all of which will be proven at trial.

### First Claim for Relief
### (Material Breach)

71. The allegations in paragraphs 1-70 above are incorporated by reference.

72. A-1 Timber materially breached the Contract by failing to work diligently and continuously to timely complete its obligations under the Contract.

73. A-1 Timber materially breached the Contract by failing to furnish all labor,

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 11 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11- ___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

**EXHIBIT B**
**Page 11 of 26**

Case 5:11-cv-00001-SLG   Document 1-2   Filed 04/08/11   Page 11 of 26

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

equipment, materials, and competent supervision required to ensure the diligent, timely and complete performance of its obligations under the Contract.

74.    A-1 Timber materially breached the Contract by failing to promptly cure its equipment failures at Long Island, and by failing to conduct any mechanical felling operations during the period of June 15 to July 7.

75.    On or about July 7, 2010, A-1 Timber acknowledged its material breach of the Contract to perform work under the Contract in a timely manner.

76.    Alcan has suffered incidental and consequential damages as a direct and proximate result of A-1 Timber's material breaches of the Contract.

77.    A-1 Timber is liable for Alcan's incidental and consequential damages which were directly and proximately caused by A-1 Timber's material breaches of the Contract.

78.    A-1 has incurred damages as a direct result of A-1 Timber's material breach of the Contract in excess of $100,000.00, the exact amount of which will be proven at trial.

## Second Claim for Relief
### (Anticipatory Breach)

79.    The allegations in paragraphs 1-78 above are incorporated by reference.

80.    A-1 Timber's failure to work diligently and continuously under the Contract clearly indicated that A-1 Timber could not perform its obligations under the Contract, which failure on the part of A-1 Timber constituted an anticipatory breach of the Contract.

81.    A-1 Timber's failure to promptly cure its lack of performance under the Contract clearly indicated that A-1 Timber would not or could not perform its obligations under the

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 12 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11- ___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

Contract, which failure on the part of A-1 Timber constituted an anticipatory breach of the Contract.

82.     A-1 Timber's work stoppages between April 23, 2010 and July 7, 2010 clearly indicated that A-1 Timber could not complete its obligations under the Contract before October 31, 2010, which constituted an anticipatory breach of the Contract by A-1 Timber.

83.     Alcan made a reasonable effort to get assurances from A-1 Timber that it could complete its obligations under the Contract after A-1 Timber stopped work on or about June 15, 2010.

84.     A-1 Timber failed to give adequate assurances to Alcan that it could complete its obligations under the Contract after it stopped work on or about June 15, 2010, which failure constituted an anticipatory breach of the Contract.

85.     A-1 Timber acknowledged its anticipatory breach of the Contract by failing to give Alcan adequate assurances that it could perform its obligations under the Contract.

86.     Alcan has suffered incidental and consequential damages as a direct and proximate result of A-1 Timber's anticipatory breaches of the Contract.

87.     A-1 Timber is liable for Alcan's incidental and consequential damages which were directly and proximately caused by A-1 Timber's anticipatory breaches of the Contract.

## Third Claim for Relief
### (Failure to Substantially Complete Contract)

88.     The allegations in Paragraphs 1-87 above are incorporated herein by this reference.

COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE
PRACTICES ACT - Page 13 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11- ___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

**EXHIBIT B
Page 13 of 26**

Case 5:11-cv-00001-SLG   Document 1-2   Filed 04/08/11   Page 13 of 26

89. A-1 Timber was fully paid for all work that it performed under the Contract.

90. Alcan fully and satisfactorily completed all of its obligations under the Contract.

91. A-1 Timber failed to substantially complete its performance required by the Contract which failure directly and proximately caused incidental and consequential damages to Alcan for which A-1 Timber is liable in an amount to be proven at trial.

### Fourth Claim for Relief
### (Breach of Covenant of Good Faith and Fair Dealing)

92. The allegations in paragraphs 1 through 91 are incorporated herein by this reference.

93. A-1 Timber owed Alcan a duty to carry out its contractual obligations in accordance with the covenant of good faith and fair dealing.

94. A-1 Timber breached the covenant of good faith and fair dealing by misrepresenting that A-1 Timber: (a) would conduct mechanical felling work in Alaska exclusively for Alcan during the Contract; (b) would diligently and timely perform the mechanical felling work under the Contract; (c) would provide sufficient equipment, supplies, materials, and personnel to Long Island and Coon Cove to enable A-1 Timber to timely perform the mechanical felling work under the Contract; (d) would replace and/or repair any equipment breakdown during the term of the Contract to avoid slow down or stoppage in work under the Contract; (e) would place personnel at the harvest area that would be responsible for managing the day-to-day issues relating to performance under the Contract; and, (f) would adequately and fully insure all A-1 Timber employees working under the Contract with worker's compensation

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 14 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-____ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

**EXHIBIT B**
**Page 14 of 26**

Case 5:11-cv-00001-SLG   Document 1-2   Filed 04/08/11   Page 14 of 26

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

insurance.

95.     As a result of A-1 Timber's breach of the covenant of good faith and fair dealing, Alcan has incurred incidental and consequential damages for which A-1 Timber is liable in an amount to be proven at trial.

### Fifth Claim for Relief
#### (Unfair Trade Practices and Consumer Protection Act)

96.     The allegations in paragraphs 1 through 95 are incorporated herein by this reference.

97.     A-1 Timber violated Alaska Statute 45.50.471(b)(11) and (12) of Alaska's Unfair Trade Practices and Consumer Protection Act by: (a) making false statements to mislead and deceive Alcan into entering into the Contract, which included but are not limited to, the following: (i) A-1 Timber promised that the mechanical felling services provided to Alcan would be the only timber-related work that A-1 Timber would do in Alaska until it satisfactorily completed operations under the Contract. This promise was material to Alcan entering into the Contract, as it gave assurance that A-1 Timber would have the equipment and personnel to timely and adequately complete its performance under the Contract. A-1 Timber knew at the time it made the promise that it would be conducting logging operations at or near Kodiak Island; (ii) A-1 Timber promised that it would have sufficient parts, equipment and personnel to diligently and timely complete its obligations under the Contract. A-1 Timber knew that all of its available equipment would be located at Kodiak Island, and that its equipment and personnel would not be available or accessible to replace any broken down

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 15 of 18

*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11- ___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

**EXHIBIT B**
**Page 15 of 26**

Case 5:11-cv-00001-SLG   Document 1-2   Filed 04/08/11   Page 15 of 26

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

equipment at Long Island or Coon Cove to ensure continuous and timely completion of its obligations under the Contract. A-1 Timber knew that Alcan would not have entered into the Contract had it been told during negotiations that A-1 Timber planned to log at or near Kodiak Island; (iii) A-1 Timber represented that the Tigercat would produce 150,000 board feet of timber each day of operations, and that operations would continue day-after-day until the entire 20 million board feet of standing second growth timber was felled. A-1 Timber knew that its representation that the Tigercat could fell 150,000 board feet of timber each day was false, and that Alcan would rely on its false representation as to A-1 Timber's capacity to fell timber; (iv) A-1 Timber represented that it would have qualified personnel on the Long Island and Coon Cove sites to manage the day-to-day business of A-1 Timber's performance under the Contract. A-1 Timber knew these statements were false at the time they were made to Alcan, and A-1 Timber knew that Alcan would rely on these statements as a material consideration to entering into the Contract with A-1 Timber; and, (b) A-1 Timber knowingly employed deceptive and false statements during negotiations of the Contract with Alcan, which statements include, but are not limited to: (i) the deceptive and false statement that during A-1 Timber's work in Alaska under the Contract that it would be working exclusively for Alcan; (ii) the deceptive and false statement that A-1 Timber would have sufficient equipment, parts and personnel to meet its obligations under the Contract; (iii) the deceptive and false statement that A-1 Timber would assign its most experienced Tigercat operator to the operations at Long Island and Coon Cove; and (iv) the deceptive and false statements that A-1 Timber would provide a qualified representative to manage the day-to-day operations at Long Island and Coon Cove.

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 16 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

**EXHIBIT B**
**Page 16 of 26**

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

98.     A-1 Timber's violations of Alaska's Unfair Trade Practices and Consumer Protection Act directly and proximately caused damages to Alcan in an amount to be proven at trial.

### Relief Requested By Alcan

WHEREFORE, Alcan prays judgment be entered against A-1 Timber as follows:

A.      For judgment in favor of Alcan for all damages, including incidental and consequential damages, suffered by Alcan by reason of A-1 Timber's material breaches of the Contract, which damages exceed $100,000.00, the exact amount of which will be proven at trial;

B.      For an award of treble damages, actual attorney fees and such other relief as may be awarded for A-1 Timber's violations of the Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 – 45.50.561..

C.      For an award of reasonable attorney fees and costs in prosecuting this action that are not otherwise awarded under the Unfair Trade Practices and Consumer Protection Act of Alaska;

D.      For an award of prejudgment and post judgment interest; and,

E.      For such other relief as the court may deem appropriate under the circumstances of this civil action.

//

//

//

COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT - Page 17 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

EXHIBIT B
Page 17 of 26

Case 5:11-cv-00001-SLG   Document 1-2   Filed 04/08/11   Page 17 of 26

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

//

Dated this 18th day of March, 2011.

                              KEENE & CURRALL
                              A Professional Corporation
                              Attorneys for Plaintiff


                              By _H. Clay Keene_____
                                  H. Clay Keene
                                  Alaska Bar No: 7610110

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT** - Page 18 of 18
*Alcan Forest Products LP v. A-1 Timber Consultants, Inc.* - Case No. 1KE-11-___ CI
hck/Alcan/10.222.A/Complaint for Breach of Contract and Violations of the Unfair Trade Practices Act.doc

**EXHIBIT B**
**Page 18 of 26**

# Falling and Bunching Contract

## Long Island and Coon Cove

This contract is made this 15th day of April, 2010 between ALCAN FOREST PRODUCTS LP, an Alaska company with offices at Ketchikan, Alaska (hereinafter called "Alcan") and A-1 TIMBER CONSULTANTS, INC. with offices in Chehalis, Washington (hereinafter called "Contractor").

In consideration of the mutual agreements expressed hereinafter and in consideration of the faithful and diligent duties and obligations by it to be performed under this agreement, the parties agree as follows:

1.    Felling and Bunching: Contractor agrees to Fall, and put into piles, trees a volume of timber estimated for purposes of this Agreement, 20 million board feet Net Scribner Scale of export quality timber from specific blocks on the Coon Cove and Long Island timber sales near Ketchikan, Alaska as shown on the maps marked Exhibit "A", attached hereto and made a part hereof and designated and marked on the ground by Alcan's representative, according to the specifications and upon the terms and conditions stated in this Agreement. These lands are hereinafter called the "Logging Lands".

Contractor shall furnish all labor, equipment, materials, supplies and competent supervision to assure the diligent, timely and complete performance of the operations required by this Agreement, Alcan shall supply fuel.

Mobilization between Seattle and Ketchikan shall be provided by Alcan prior to the start of this Agreement. Once completed, Alcan shall furnish return transportation to Seattle. Mobilzation within Alaska shall be at discretion and to the account of Alcan.

2.    TERM: The term of this Agreement shall be one 1 logging season, commencing on or about April 15, 2010 and terminating on October 31, 2010 or upon completion.

4.    TITLE REMAINS IN ALCAN: Ownership in all logs and timber to be logged hereunder shall be and remain in Alcan. Alcan warrants that during the term of this Agreement, it will have the right to remove, or cause to be removed from the Logging Lands all of the timber to be logged under this Agreement.

5.    PERMITS:

A.    Forest Practices Applications. Alcan shall prepare and submit any forest practices applications required in connection with logging operations covered under this contract. Contractor

1

EXHIBIT A
Page  1  of  8  Page(s)

shall conform in all respect to the authorization so issued and with any and all such additional requirements as may be established by Alcan.

B. Other Permits. Alcan shall be responsible for submission and approval of all permits and authorizations required by Federal or State agencies related to structures or work in or affecting navigable waters of the U.S., tideland, forest practices, environmental and health, and all other required permits.

C. Permit Compliance. Contractor shall be responsible for complying with permit requirements and responsibilities. Contractor shall be liable for damages for failure to comply with permit requirements.

D. Waste Disposal. Contractor shall dispose of used oil, batteries, tires, scrap equipment, oil drums, petroleum products and containers and garbage as governed by State and Federal agencies and as directed by Alcan's representative. Contractor will implement good housekeeping rules and enforce them.

6. SPECIFICATIONS: Contractor shall Fall and Bunch all timber within units marked on the ground by Alcan that is operationally possible to log and contains at least one log of 50 or more board feet.

7. SORT SPECIFICATIONS: Contractor will not be required to buck logs.

8. TIME OF PERFORMANCE: Time is of the essence in the performance of this contract as Alcan's logging program is dependent upon the completion of the logging within the times specified herein. Contractor shall commence work on or about April 15 2010 and acts of God, strikes, war, invasion and weather permitting shall carry on diligently and continuously to completion all logging activities required hereunder by October 31, 2010.

9. LOCATION OF CUTTING LINES - TRESPASS: Alcan shall locate and mark the lines between Logging Lands and adjoining lands and Contractor agrees not to go outside these lines and shall avoid trespass upon the adjoining lands. Alcan agrees to indemnify Contractor against any cost, loss, liability or damage incurred or sustained by Contractor on account of any erroneous or improper location or marking of lines between the Logging Lands and adjoining lands. Contractor agrees to indemnify Alcan against any cost, loss, liability or damage incurred or sustained by Alcan on account of any trespass or improper cutting of timber by Contractor unless attributable to erroneous location and marking of lines by Alcan.

10. SCALING: Not applicable.

11. CONTRACT PRICES AND PAYMENT: Alcan shall pay to Contractor for complete performance of its obligations under this contract the amount set forth in Exhibit B, attached hereto.

12. COMPLIANCE WITH FOREST PRACTICES, LOGGING, FOREST FIRE AND SAFETY LAWS AND REGULATIONS: Contractor agrees that the landowner of included timber has entered

2

Case 5:11-cv-00001-SLG   Document 1-2   Filed 04/08/11   Page 20 of 26

into a contract with Alcan for harvest of said timber. Alcan's contract with landowner is hereby included and applicable sections made part of this contract. Contractor agrees that he shall carry on his logging operations hereunder, and all work of whatsoever character in any manner connected therewith, all in strict compliance with the laws of the State of Alaska and of the United States of America, and any rules and regulations promulgated in conformity thereto, including but not limited to those regulating to logging, forestry, fire prevention, safety and environmental protection. Contractor shall comply with Alcan's stated Forest Management Practices and Policies and Policies and any additional reasonable measures which Alcan may specify as stated in, but not limited to those measures listed in Exhibit "C" attached hereto and made a part hereof.

13. FIRE PREVENTION: Contractor acknowledges he has an operable fire suppression system on his equipment. This equipment will be maintained in good operating condition. Contractor agrees to indemnify Alcan against all cost, loss, liability and damages arising out of or connected with fire caused by Contractor or his logging operations and any violation of the Forest Practices Regulations.

14. ROADS: Alcan grants Contractor permission to use, at the Contractor's risk, all roads owned or controlled by Alcan to the extent necessary for performance of this contract. Contractor shall comply with all reasonable rules and regulations that Alcan may prescribe relating to traffic, safety, road protection and fire prevention measures for such roads. Alcan shall have the right to close said roads during such periods as Alcan, in its judgement, deems such closure necessary to prevent abnormal deterioration thereof due to weather conditions or as a fire prevention measure.

15. CONTRACTOR IS INDEPENDENT CONTRACTOR: It is understood that Contractor is and shall be considered for all purposes an independent contractor, and is not and shall not be considered for any purpose an agent or employee of Alcan, nor be considered for members, agents, servants or employees be or be considered as the agents, servants or employees of Alcan. Alcan shall have no right of control over Contractor in Contractor's performance of this contract.

16. INDEMNIFICATION: Contractor hereby indemnifies Alcan against and saves and keeps Alcan harmless from any and all expenses, costs, losses, claims, demands or liabilities arising from the acts or omissions of Contractor, its employees, agents or contractors. This agreement to indemnify does not purport to and shall not be deemed to indemnify against liability caused by or resulting from the acts or omissions of Alcan, its employees, agents or contractors. In no event shall either party be liable to the other for incidental or consequential damages.

17. CONTRACTOR'S LIABILITY INSURANCE: Before commencing operations hereunder, Contractor shall deliver to Alcan evidence, in the form of an insurance certificate, that Contractor has in force in a company satisfactory to Alcan, a comprehensive liability policy with limits of not less than $1,000,000 per accident as respects bodily injury, $1,000,000 per accident as respects property damage including logger's broad form coverage, annual aggregate liability of $1,000,0000. The certificate shall provide that the insurance shall not be cancelled without thirty days written notice and shall remain in force during the entire term of this Contract. Alcan, The Long Island

3

EXHIBIT A
Page 3 of 8 Page(s)

EXHIBIT B
Page 21 of 26

Trust and Cape Fox Corporation shall be named as an additional insured(s) under the policy. Alcan is not responsible for Contractor's or Contractor's employees personal property for any reason. It is the responsibility of Contractor or Contractor's employees to either obtain their own insurance for personal property or assume their own risk. Contractor shall notify employees of personal property risk.

18.    WORKER'S COMPENSATION: Contractor shall abide by and comply with all provisions of the Worker's Compensation Act, Medical Aid Act and other industrial insurance laws of the State of Alaska, and shall make all payments, contributions and other remittances and all reports, returns and statements required of employers under said laws. Contractor further unconditionally guarantees full compliance with said laws by any subcontractor or any contract for the performance of any of the work hereunder. Contractor agrees to indemnify Alcan against any cost, loss, liability, obligation or lien which may arise as a consequence of or grow out of any failure by Contractor or any such subcontractor or other person fully to comply with said laws. Contractor agrees immediately to qualify and shall require its subcontractors to qualify and to remain qualified for the term of this contract, as an employer under all such laws. Contractor shall deliver to Alcan, before any work is begun, satisfactory evidence and certificates showing compliance by Contractor under said laws.

19.    UNEMPLOYMENT COMPENSATION, SOCIAL SECURITY AND INCOME TAX LAWS: Contractor agrees to and does accept exclusive responsibility, with respect to employment of persons in the performance of this contract, including employment of subcontractors and of persons employed by subcontractors for the performance of any and all obligations imposed upon employers under any and all obligations imposed upon employers under any unemployment compensation, pension, social security, income tax or other similar and applicable federal or state laws now in force or which may hereafter become effective or be enacted, including the payment and/or deduction and remittance of any and all contributions, taxes fees and charges under such laws, and Contractor agrees fully to comply with and to make all returns required by any and all such laws and agrees to indemnify Alcan against any cost, loss, liability or obligation which Alcan may sustain or incur by reason of the failure of Contractor, or of any subcontractor employed by Contractor, to perform any of the undertakings stated in this paragraph. Contractor agrees to qualify, and shall require all of his subcontractors to qualify, and remain qualified for the term of this contract, as an employer or employers under any and all such laws.

20.    SUBCONTRACTORS: Contractor agrees to and does accept exclusive responsibility with respect to the payment of compensation to any and all subcontractors retained or employed in the performance of this contract and agrees to indemnify Alcan against any cost, loss, liability, claim or obligation which Alcan may sustain or incur by reason of the failure of Contractor to perform the undertakings stated in this paragraph.

21.    ALCAN'S RIGHT TO TERMINATE - REMEDIES: In case Contractor shall fail to perform any part of this contract by him to be performed promptly and in the manner herein specified, Alcan may, at its option, terminate this contract and all rights of Contractor hereunder by giving written notice of such termination to Contractor personally or by mail addressed to the Contractor at the address appearing herein. In such event Alcan shall be entitled to take immediate possession of the

4

EXHIBIT A
Page 4 of 8 Page(s)

above described lands and the timber thereon and all logs cut therefrom and to remove Contractor, his agents, servants and employees from said lands.

22. SUSPENSION, TERMINATION BECAUSE OF MARKET CURTAILMENT, ETC.: If it appears to Alcan that it shall be unable to handle or take delivery of logs because of casualties, acts of God, strikes or other labor difficulties or because Alcan's outlets for nonpulp grades of logs are materially reduced, then Alcan may, at its option and by at least fifteen (15) days written notice to Contractor or lesser time where the circumstances leave no other reasonable course, require Contractor to suspend deliveries and/or logging operations hereunder for such time during the period of market curtailment, or other difficulty as the notice shall specify, and no deliveries shall be made and/or logging operations carried on during the period of suspension as stated in such notice. After receipt of notice of suspension, Contractor may, at his option, terminate this contract at any time during the period of suspension by giving at least fifteen (15) days written notice to Alcan unless Alcan shall, within ten (10) days after receipt of such written notice of termination, notify Contractor to resume deliveries and / or operations hereunder, in which case the contract shall continue in full force and effect.

23. SUBCONTRACTING OR ASSIGNMENT: The work under this contract shall not be subcontracted or assigned to another party without the written consent of Alcan.

24. ATTORNEY'S FEES: If any suit or action is commenced by any party to enforce any provisions of this Contract, the prevailing party shall be entitled to recover reasonable attorney's fees as determined by the trial court and, in the event of appeal, as determined by the appellate court or other appellate tribunal.

25. FORCE MAJEURE: Neither party hereto shall be liable for any delay or default in performance hereunder due to any cause beyond its control and not occasioned by an act or omission of either party, its agent or assigns, including but not limited to acts of God or the public enemy, acts of the federal or state government, or of any state or federal officer or agent purporting to act under duly constituted authority, floods, wars, fires, storms, strikes, lockouts or other labor disturbances, weather conditions, interruptions of transportation, freight embargoes or failures, exhaustion or unavailability on the open market or reasonably unpredictable delays in delivery of material, equipment or service necessary to the performance of any provision hereof, whereby performance hereunder is delayed or prevented.

26. NOTICE: Any notice given hereunder shall be in writing and shall be deemed to have been duly given when deposited into the United States mail, postage prepaid, as registered or certified, addressed as follows:

To Alcan:

Brian Brown
Treasurer, Alcan Forest Products
111 Stedman St., Suite 100
Ketchikan, AK 99901
FAX: (907)225-1709

To Contractor:

Tom Loushin

5

President, A-1 Timber Consultants, Inc.
PO Box 1001
Chehalis, WA  98532
Fax: (360)748-0607

27.    ON SITE REPRESENTATION: The parties agree that each of them will have a representative on site authorized to represent them on day-to-day management issues.  Each party agrees to keep the on site representative of the other informed of all material developments and all items requiring notice.  The on site representatives shall be:

      For Alcan:                    Eric Nichols

      For Contractor:            Dan Ward

28.    APPLICABLE LAW:  The law of the State of Alaska shall govern this Agreement.

29.    ENTIRE AGREEMENT:  This contract consists of the foregoing paragraphs number 1 to 29 inclusive, and constitutes the complete agreement between the parties and there are no other agreements written or oral.  No amendment shall be effective unless done in writing and signed by both parties.

      IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

A-1 Timber Consultants, Inc.              ALCAN FOREST PRODUCTS

By: _Tom Toushin_               By: _____

Its: _Pres._                    Alcan Alaska Timber Corp. as General Partner
                                   for Alcan Forest Products LP

## Exhibit "B"

### Price Schedule

A.    <u>Tigercat 370</u>:  **$220 per cutting hour,**

B.    <u>Payment</u>.  Payment shall be credited bi weekly based on approved time for the two weeks prior to each Monday.

6

EXHIBIT
Page __6__ of __8__ Page(s)

EXHIBIT B
Page 24 of 26



Klukwan, Inc.

Long Island Ownership

1:88980

1 MILE

EXHIBIT A
Page 1 of 8 Page(s)

